(C. D. 203)

Blanchard Bros. & Lane v. United States

United States Customs Court, First Division

(Decided August 25, 1939)

*Strauss & Hedges* (*Eugene F. Blauvelt* of counsel) for the plaintiffs.
*Webster J. Oliver*, Assistant Attorney General (*Marcus Higginbotham, Jr.*, and *Charles J. Miville*, speciall attorneys), for the defendant.

Before McClelland, Sullivan, and Brown, Judges

McClelland, Presiding Judge: The merchandise the classification of which is the subject of these protests is described on the invoices as "russet top grain hides" and was assessed with duty by the collector of customs at the rate of 20 per centum ad valorem under the provision therefor in paragraph 1530 (b) (5) of the Tariff Act of 1930. Various claims are made in the protests for classification under other paragraphs of the tariff act carrying lower rates of duty but the protests have been submitted for decision with reliance only upon the claim that the merchandise is entitled to a reduction of 20 per centum of the rate of duty assessed by virtue of the Cuban Trade Agreement, reported in T. D. 47232, and a treaty between the United States and the country of exportation, Germany, containing a most-favored-nation clause, or by virtue of the said Cuban Trade Agreement and section 350 (a) of the Tariff Act of 1930.

The merchandise here involved was imported and entered on February 25, 1935, and April 20, 1935, The treaty referred to in the protests is evidently that concluded between the United States and Germany and proclaimed October 14, 1925 (44 Stat. 2132). That treaty has since been formally denounced, but at the time of the importations here in issue it was apparently in force and effect.

Article VII of the aforementioned treaty contained the following provision:

The stipulations of this Article shall apply to the importation of goods into and the exportation of goods from all areas within the German customs lines, but *shall not extend* to the treatment which either Contracting Party shall accord to purely border traffic within a zone not exceeding ten miles (15 kilometers) wide on either side of its customs frontier, or *to the treatment which is accorded by the United States to the commerce of Cuba under the provisions of the Commercial Convention concluded by the United States and Cuba on December 11, 1902 or any other commercial convention which hereafter may be concluded by the United States with Cuba * * *.* [Italics added.]

It is therefore manifest that plaintiffs' claim for most-favored-nation treatment of the leather in issue by virtue of the aforementioned treaty is without merit and is, therefore, overruled.

Section 350 of the Tariff Act of 1930 is known as the Trade Agreements Act and became operative on June 12, 1934 (48 Stat. 943, T. D. 47117). On August 24, 1934, the Cuban Trade Agreement was entered into under the terms of the said act (see T. D. 47232). The merchandise here in issue was entered during a period in which no other trade agreements were in effect.

By the terms of subsection (a) of the Trade Agreements Act, *supra*, it is provided that—

The proclaimed duties and other import restrictions shall apply to articles the growth, produce, or manufacture of all foreign countries, whether imported directby, or indirectly: *Provided,* That the President may suspend the application to articles the growth, produce, or manufacture of any country because of its discriminatory treatment of American commerce or because of other acts or policies which in his opinion tend to defeat the purposes set forth in this section; and the proclaimed duties and other import restrictions shall be in effect from and after such time as is specified in the proclamation. The President may at any time terminate any such proclamation in whole or in part.

Subsection (b) of the same act reads as follows:

(b) Nothing in this section shall be construed to prevent the application, with respect to rates of duty established under this section pursuant to agreements with countries other than Cuba, of the provisions of the treaty of commercial reciprocity concluded between the United States and the Republic of Cuba on December 11, 1902, or to preclude giving effect to an exclusive agreement with Cuba concluded under this section, modifying the existing preferential customs treatment of any article the growth, produce, or manufacture of Cuba: *Provided,* That the duties payable on such an article shall in no case be increased or decreased by more than 50 per centum of the duties now payable thereon.

The basis of plaintiffs' claim under section 350 is stated in the brief filed in its behalf as follows:

The last part of Section 350 (b) contemplates that articles from foreign countries shall not have the benefit of the trade agreement with Cuba if (1) an exclusive agreement is made with Cuba *and* (2) if said agreement *modifies* existing preferential treatment of any article the growth, produce, or manufacture of Cuba. The last paragraph of Article III of the trade agreement with Cuba makes the reduction to Cuba on its face exclusive and preferential. This, however, does not affect the present case because it is evident from the wording of Section 350 (b)

that in order to prevent the operation of the provision in Section 350 (a) that reductions of duty shall apply to all foreign countries, there must be not only an exclusive agreement with Cuba, *but also one* which *modifies* the existing preferential customs treatment accorded to Cuban goods.

The language of the Trade Agreements Act, *supra*, is plain and unambiguous, and we can find no authority therein for the construction contended for by the plaintiff. The congressional intent to exclude from the operation of the so-called "generalization clause" in the act (section 350 (a)) the benefits of any exclusive agreement which might be entered into between the United States and the Republic of Cuba pursuant to the terms of the said act could be made no more plain than it appears in section 350 (b), *supra*. It is there made manifest that the provisions of the 1902 reciprocity treaty between the United States and Cuba shall be continued in force except so far as modified by virtue of such exclusive trade agreement.

The Cuban Trade Agreement, *supra*, modified as to certain articles the preferential customs treatment granted to Cuba under the 1902 treaty, but in all other respects it in effect continued the preferential treatment theretofore enjoyed under the said treaty. There is no ground for a construction, as claimed by the plaintiff, of the language of section 350 (b), *supra*, to the effect that articles imported into the United States from foreign countries other than Cuba shall have the benefit of the preferential treatment accorded to the products of Cuba under the Cuban Trade Agreement in all cases where the agreement failed to modify the previously existing treatment accorded such articles. That construction would have to be predicated upon an intent on the part of Congress in enacting section 350 (b) to discontinue the preferential treatment accorded Cuba as to such articles. The contrary intent is manifest from a careful reading of the section.

See also in this connection our decision in *Louis Wolf & Co.* v. *United States*, C. D. 48.

The protests are therefore overruled and the decision of the collector is affirmed. Judgment will issue accordingly.